Good morning. May it please the Court, my name is Mary Hansberry and I'm here representing Plaintiff and Appellant Rhonda Wilkinson and we're here today because the District Court should not have dismissed Ms. Wilkinson's claims on summary judgment and I'd like to focus the short amount of time that I have here today on the transfer which is the basis for one basis for Ms. Wilkinson's And in that claim, I think it's key to look at what evidence there is in the record. We argue in our papers that the transfer itself was, there is a tribal issue of fact as to whether that transfer was motivated by retaliation or as the school district would put it, a concern about Ms. Wilkinson's safety. So I want to start there and focus my argument on that part of the papers. Well I think your strongest claim is as to the retaliation as to the the hostile work environment. I think you obviously have that that's a more difficult rock to push uphill here. I would agree with Your Honor on that point. We believe that the standard is what would a reasonable victim feel as to the conduct in there. I would agree that the sexual harassment claim is less strong than the So I would like to focus the Court's attention on the transfer itself and why the facts show that there is evidence of pretext sufficient to preclude summary judgment on that claim. And I think the key case here would be the Bergeen v. Salt River Project case. In that case, in an opinion which I know was authored by Judge Schroeder, there are very similar facts to what we find here. And the key piece of evidence in that case and in this case is that there was an actual threat of retaliation by the supervisor and decision maker as to the transfer in this case. And in Bergeen, the same thing happened there. There was a threat by the person who ultimately made the decision that was the basis. All right. So the adverse action that you're claiming is the transfer. That's correct. I mean, obviously, I think the briefs, well, I sort of when you go back, there's other things that are talked about in terms of her evaluations. But you're saying that the transfer is that that's what you're claiming to be the strongest adverse action. That's correct. That's correct. All right. Point to the evidence that you think that's the strongest that would Well, I believe the district court said that there wasn't even a prima facie case for retaliation. But just point to the evidence that you think that's the strongest regarding retaliation. That's fine. And I can address the prima facie case as well. But as far as pretext and I think, you know, they're related, the evidence would apply to both the prima You're working on your advanced degree. And if you keep this up, you're not going to go anywhere. Is that what you're saying? To that. Exactly. Exactly. She said if I believe the evidence will show in the Wilkinson affidavit is the point where you can see what she was told that if she in the context of discussing whether she would take her claim to the Nevada Equal Rights Commission, Ms. Powers, that if she were to take her complaints outside the district, her career would be over or words to that effect. Well, what you're the retaliation that you're claiming has to do with the opposition clause, right? That's as opposed to participation. Correct. Was there not a comment in the record somewhere? And I'm going to ask counsel your for the appellee that one of her supervisors characterized the behavior as sexual harassment. That's correct. Mr. Rodriguez, there is deposition testimony where he does state and confirm that he understood she was complaining about sexual harassment. No, there's there's a comment in the record. I can't remember the name of the person starts with an H where the comment was that this is sexual harassment. It wasn't a question of the nature of her complaint. It was a question of the nature of the activity. Correct. Miss, what you're referring to is a statement by an administrator at the school district called Brenda Harley and Brenda Harley. And Wilkinson states this in her affidavit that she described the behavior at issue. And Miss Harley told her that's sexual harassment. And I believe that evidence is key, not only for particularly for whether her belief that the conduct she was complaining about was sexual harassment was reasonable. Let me ask a question in connection with the structural aspect of the argument and what the court would do if we agreed with you that a prima facie case was stated. Should we reach pretext or would we remand for the trial court to determine? Well, that would depend, Your Honor, on whether this court would agree that the school district stated non-discriminatory, non-retaliatory reason for making the transfer, which they say is because they were worried about her safety. Well, I'm asking you, though, since the trial court did not reach that question, should we reach that question? Yes, because here we're talking about de novo review, Your Honor, on a summary judgment motion. So this court can affirm or deny the summary judgment on any ground that's supported by the record here. And you're saying the record wouldn't be any different. I mean, the record's the record in this case. So we have everything. That's correct. That the district court would have. That's correct, Your Honor. And so I'll return to what you've correctly identified as the strongest point that should get Ms. Wilkinson back to a fact-finder jury here, which is the transfer. And I think if the Court were to look carefully at Bergeen, that case says that if where there is direct evidence, like a threat, just as we have here, the threat that if you engage in activity protected under Title VII, something bad will happen to you, that's what we have here. That alone in Bergeen, the Court states that that is alone sufficient to raise a tribal issue as to pretext. And the district court did not, for some reason, even address that information. And I'm not sure, Your Honor, I want to look back at the order itself, but I think the court, district court, does make a comment about the fact that it goes beyond a prima facie case. At least it's arguable that the order is somewhat slim, as you may recall. So in addition to the direct evidence, the threat by Ms. Powers of retaliation, there are other circumstantial – there's other circumstantial evidence in the record that would support a tribal issue of pretext. And I want to talk a little bit about the difference between what – how Ms. Wilkinson was treated when she was transferred, the conditions of her transfer. I think that the school district argues, well, you know, she worked at the same spot at some other point in time, and she worked there, you know, and so why would it matter that she was transferred there again? That's not retaliatory. But we would beg to differ on that point, because when she was sent to the Siegel Center and supervised directly by Ms. Powers, who made the threat, she ultimately had no desk, no chair, no – her job duties were diminished, and there's no explanation for that. I think that if anyone who made a complaint and then was suddenly placed in this situation where she didn't even have a desk, they would be, you know, unlikely to want to complain about Title VII protected activity conduct. You may want to – Yes. I see my time is almost – I'm going to reserve the rest of my time for rebuttal. Thank you. Okay.  Good morning, Your Honors. My name is Scott Greenberg. I am the Assistant General Counsel for the Clark County School District. May it please the Court. Appellant's counsel didn't discuss the sexual harassment allegations. I'm not sure if this Court is that interested in it. I would simply note that we have, at most, ten comments over a two-year period, none being – in the reply brief, I believe there was a comment saying the district court erred by saying they're not sexual in nature. That comes into whether they're severe comments. Courts have routinely found comments of a sexual nature, allusions to sexual acts, those type of things, are obviously more severe than just profanity. The cases that a plaintiff has cited, Steiner, Connor, those all had explicit sexual comments and essentially requests for sexual types of acts. So we believe that clearly this did not raise to the level of a severe pervasive conduct on a sexual harassment claim. We are obviously aware that probably the Court's biggest concern possibly is the retaliation claim. I think that's a safe assumption. And I would like to point two things out, and this is about Ms. Wilkinson being at Siegel before. Just so you briefly the factual background, Ms. Wilkinson has been a clerical employee at many different schools, at many different work sites. How she ended up at Siegel in the first place was she made a prior complaint about her work area and requested that she get a transfer. They moved her from the Transportation Department to Siegel, which is a completely different department. It's early childhood. It deals with special ed issues. And Siegel is a facility that's been there a long time. She accepted that transfer and worked there for at least six months or so until she goes to Gates. Gates is not really a school. Gates is a county facility that has pre-kindergarten people there. There's a picture that Ms. Wilkinson, that's in the record, I can give you the site if you need, where she shows what her area was like. She was essentially like the receptionist. She was the first person you walked in, so she had this large built-in area. Now, when she goes to Siegel, she first goes for two weeks. And there's no dispute that Ms. Wilkinson calls the police, calls her supervisor, says, I am in fear for my life. Now, at that point... Okay, but here, this is summer judgment, all right, and the U.S. Supreme Court has been very, I think, charitable towards employees on the issue of retaliation. I mean, they've, in terms of like Burlington and all of that. It's a difficult area for employers. So you have to, we have to assume all points favorable to the plaintiff in terms of, yes, all right, you can state certain things, but the things that I think that you really have to, you've got to deal with here, and whether why, you know, why I question whether summary judgment was appropriate on the retaliation are, you know, one of the things, yes, that, yes, she was, you know, she does make the points that she's afraid for her safety, but she has also complained about this individual. And so the employer transfers the person that complains as opposed to transferring the person that is supposed to, you know, that they're saying is the problem. And let me, I don't... And, but you also, you have, you have some comments that you have to deal with in the record that, that have to do with, I mean, number one, you know, that you've got your own district harassment policy. If you look to the language of that, includes, it says, sexually degrading words used to describe individual and graphic verbal commentaries about an individual's body. And then you have the comment of, which I think you claim is hearsay, but you've got Brenda Harley's statements, and they, I think they arguably could come in as party opponent admissions or statements not offered for the truth. So... That's plaintiff's allegation. Plaintiff does not say, and first of all, let's understand, Brenda Harley was not her supervisor. Brenda Harley had nothing to do with the complaint procedure. Brenda Harley was another supervisor at another area where plaintiff says, I called her up and told her what was going on, and she says it's, it's sexual harassment. What plaintiffs said in their brief, they, they've said, we're not using that for the truth. We're using that for Ms. Wilkinson's statement. Well, and these are all reasons you might win at trial, but tell me how summary, that it's a summary judgment standard. Exactly. And that's why the case that is determinative is Burlington Northern. And in that, while the Supreme Court said, you know, basically the whole ballgame is out there, basically an employee can try to say anything retaliatory, they said the context matters. They went out of their way to say the circumstances matter. So that's why you can't just say a transfer is a problem. That's why it's important that Ms. Wilkinson affirmatively said. Well, do you concede that a transfer can be an adverse action? Of course, of course I concede that it can be. What is it? I'm sorry. What is it that she affirmatively said? She affirmatively called the police. She affirmatively told her supervisor, I'm in fear for my life. And this is at a time when she hadn't seen Mr. Edmonds for at least four or five months, and there's no allegations of anything new. The employer is then in, in between a rock and a hard place. You're right. Are you going to transfer somebody? I will tell you that they had two different jobs. He's a part-time custodian. There is no, nothing in the record where plaintiff has tried to show there was another job to move him to. That's why it's important that she had worked at Siegel before. That's a place she voluntarily took a job to. And she does not claim that Siegel was any different when she worked there after agreeing to go there than when her transfer. What she's complaining is Siegel was worse than Gates, where she had her own area. She does not say Siegel was any different than when she had worked there before being in a crowded environment. And so what I think that a big issue in this case, obviously the factual basis of this for summary judgment is, you have to have an adverse action. That's part of the prima facie case. Burlington Northern gives us that standard, and Burlington Northern says context matters. In this case, you have things that do not come up in cases that I have seen. That is, the plaintiff has now said, I'm in fear for my life. Lots of cases, they come up and say, look, there's a union, there's other jobs available. Plaintiff has done nothing like that in this case to suggest that there was another place to put this part-time custodian who wasn't even at his school. But is that the plaintiff's responsibility? And what do you? To show alternative, if she's going to say the transfer was adverse action, I think she would have to show, here was somewhere he could go. Well, what do you do with a statement, you know, another elephant in the room, that someone told her, if you go outside and complain, you have no future here? She alleges that statement was made. And for purposes of summary judgment, we have to assume that it's true. Correct. She says there was something about her career. She's had the same job for over 10 years. And she says somehow a statement was made that she won't have a future for promotions or something, not that she was looking at them. But what I have to say to that is, it gets back to the issue is whether this is an adverse action under Burlington Northern. Even if threats are made, if it's not an adverse action, she hasn't met her prima facie case. And I would like to speak to- So is your strongest argument that this is not an adverse action? Yes, that was our argument below, our main argument. And she went to Siegel more than once. She originally went there for at least two weeks. And I think in a footnote in the opening brief, counsel says, well, we're not disputing those first couple weeks that she went there. She goes back to Gates. She then complains again, I'm in fear for my life. And they said, okay, we're going to move you to Siegel again. Again, if Siegel wasn't that bad for the two weeks she was there, you have to understand what she's complaining about her work environment. She only says happened for, at some places, she says three weeks, four weeks. If I understand your argument, it is that she was, the motive of the employer was to transfer her because of her concerns for her safety. Correct. And not because she had been complaining about sexual harassment. And you have the statement that she made that you rely on, you have the threat that the other side relies on. How are we, isn't this ultimate, sounds like it's ultimately a jury question. That gets back to the issue, she has to prove a prima facie case. And regardless of whatever threat she says is out there, an adverse action is part of the prima facie case. That's where Burlington Northern is. So obviously, you have to decide whether that- So you don't think that the transfer itself- That's correct, that's our position. And her testimony with respect to what it was like when she got there and how she was treated, you don't want us to credit that at all? You can credit that. Again, her testimony is that this, the way that was, was for a few weeks. Obviously, they had to move her there quickly. She says, I'm in fear for my life. She does make a lot of conclusions. I will tell you when she says my job wasn't as complex as it was before. There's absolutely nothing in the record of specifics. I did this, now I'm not doing this. She answered the phone, she filed, she typed, she is a clerical employee. Well, let me ask you this. Yes, Your Honor, this does go back to the adverse. That this transfer surely transfers in some situations. But what we have is, once she says, I'm in fear for my life, we have to do something, and that's where I get back to- Well, you have to do something, but maybe you have to do something to get the person that she's afraid of out of there. Well, that goes to, an employer has to make a management decision. And in Burlington Northern, that's my town I don't want to show up, that they allow for management decisions. And that's why they say the context matters. She has, in the record, she's complaining fear for my life. She goes for two weeks. She doesn't have a problem being there for two weeks. She wants to go back. Okay, in your view, all the material facts to determine that are undisputed. That's your view. Right, because again, the question is whether this is an adverse action. And we have a limited few weeks where she says, this is awful. I'm not so sure that she really says the transfer in of itself is transfer. And I would say, Judge Lynn, I think you have a case, Aztec, where you say 30 miles more travel is not more making an interest. I'm in the Ninth Circuit now. I'm sorry, I'm sorry. Am I wrong? I understand that. But again, there is no case on that. She says she has to go 10 miles. She does not say the transfer in of itself is. It's the work conditions. I think we understand your position. Thank you. Thank you. I just want to touch on a couple of things that opposing counsel said, which, you know, one is that, you know, she was at Siegel before. She was transferred to Siegel later. Big deal. And it was a big deal. And, I mean, one key point is that there is no evidence in the record whatsoever as to whatever her conditions were at Siegel before. So I don't see how he can say that they were the same. There's absolutely nothing in the record to support that. And to the contrary, the evidence is clear that what Ms. Wilkinson testifies to is the conditions were worse. And I submit to the Court that under Burlington Northern, they were bad enough to dissuade a reasonable worker not to make a complaint. And that's the standard we're talking about on adverse employment action. I think that the record supports a finding that there was an adverse action as to this particular transfer. And I also want to touch on the fact that, you know, as Judge Callahan, you know, observes that this is summary judgment. The record contains substantial evidence for the Court to find. This is an eerie question as to pretext. And there is absolutely no question that Ms. Wilkinson complained about sexual harassment. The district itself admits that in its — in Mr. Rodriguez's deposition. That's clear. So on these points, we ask that the Court reverse summary judgment as to the retaliation claim and give Ms. Wilkinson her day in court on that claim. Thank you. Thank you. The matter just argued is submitted for decision.
judges: Lynn, Schroeder, Callahan